279 N.J. Super. 449 (1995)
653 A.2d 568
GENERAL MOTORS CORP., PLAINTIFF-APPELLANT-CROSS-RESPONDENT,
v.
CITY OF LINDEN, THE ASSESSOR OF LINDEN, AND RICHARD CHAIKEN, DEFENDANTS-RESPONDENTS-CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1994.
Decided February 3, 1995.
*453 Before Judges SHEBELL, SKILLMAN and KLEINER.
Kenneth S. Geller, a member of the District of Columbia Bar admitted pro hac vice, argued the cause for appellant-cross-respondent (Garippa & Davenport, attorneys; John E. Garippa, Philip J. Giannuario, John J. Sullivan and Mr. Geller, on the brief).
Donald P. Jacobs argued the cause for respondents-cross-appellants, City of Linden and the Tax Assessor of Linden (Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, attorneys; Carl Greenberg, Vincent J. Proto and Mr. Jacobs, on the brief).
Michael H. Cohen argued the cause for respondent-cross-appellant Richard Chaiken (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Heidi P. Rubin Cohen and Mr. Cohen, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Plaintiff General Motors Corporation brought this action under the Federal Civil Rights Act, 42 U.S.C.A. § 1983, against defendants City of Linden ("Linden"), its tax assessor, Emanuel Frangella *454 ("Frangella"), and an independent real estate appraiser retained by Linden to assist in valuing plaintiff's property, Richard Chaiken ("Chaiken"). Plaintiff claimed that defendants violated its rights under the federal and state constitutions by imposing an arbitrary, discriminatory and excessive property tax assessment on its automobile assembly plant in Linden. By an amended complaint, plaintiff claimed that Chaiken negligently valued its property and therefore is also liable under common law tort principles.
The Law Division concluded that it lacked jurisdiction over plaintiff's § 1983 claims because they relate to a tax assessment. Despite holding that it lacked jurisdiction, the Law Division also ruled that the individual defendants have absolute immunity from suit under § 1983 for an alleged violation of constitutional rights relating to a tax assessment and that Linden cannot be held responsible for any constitutional violation which its tax assessor may have committed. In addition, the Law Division, citing J.H. Becker, Inc. v. Marlboro Township, 82 N.J. Super. 519, 530, 198 A.2d 463 (App.Div. 1964), dismissed plaintiff's common law negligence claim against Chaiken on the ground that his valuation of plaintiff's property was "not binding upon the tax assessor." The trial court subsequently denied defendants' motions for counsel fees and costs.
Plaintiff has appealed from the summary judgment in defendants' favor and defendants have cross-appealed from the denial of their applications for counsel fees and costs.
Initially, we note that the order from which this appeal has been taken is not a final judgment appealable as of right because it does not include a final determination of defendants' applications for counsel fees and costs. Defendants argued in support of their applications for attorney fees that even if they did not enjoy absolute immunity from suit under § 1983, plaintiff's proofs were "woefully inadequate and could not sustain a cause of action." In denying defendants' applications, the trial court stated:

*455 [D]efendants also base their request for attorney fees on the assertion that General Motor's lawsuit lacked any basis in fact....
Plaintiff responds that it would be unfair for this Court to grant attorney fees ... because discovery has been stayed and therefore, the facts have not been disclosed....
....
[P]laintiff argues that it has sufficient proofs, or will through discovery obtain sufficient proofs to show that the defendant's assessment was the result of discrimination or retaliation....
Plaintiff argues that it should not be stalled from developing further proofs of a conspiracy and that, under the circumstances, a motion for attorney fees at this time is premature. General Motors argues that it should be given the opportunity to have discovery and to brief and argue the facts which it alleges demonstrates a conspiracy and bad faith.
This Court accepts the plaintiff's argument at this time thereby denies the defendants' request for attorney fees. But I note once again that the proofs submitted to date are inadequate and insufficient as a basis for a 1983 claim.
In light of my decision regarding attorney fees, the issue of costs will be held in abeyance until such time as the issue of attorney fees is resolved.
Thus, the trial court's denial of defendants' applications for counsel fees was without prejudice to their later renewal, because that denial was based in part on plaintiff's request to be allowed to conduct additional discovery.
This decision was memorialized by a "final order," entered on June 30, 1993, which stated in part that "defendants' motions to include reasonable attorneys' fees as part of their costs are hereby denied, and that the issue of defendants' court costs shall be held in abeyance." Considered in light of the court's prior oral opinion, we read this order to deny defendants' applications for attorney fees without prejudice to their renewal after General Motors completes discovery. See Church of Scientology of Cal. v. Cazares, 638 F.2d 1272, 1290 (5th Cir.1981) (indicating that even though a § 1983 action presents "novel legal issues," it nevertheless may be "groundless" and thus warrant an award of counsel fees to a defendant if plaintiff's claims have no substantial factual foundation). In addition, this order expressly held defendants' application for costs in abeyance.
An appeal as of right may be taken to this court only from a final judgment, which requires a final disposition of all claims as *456 to all parties. Hudson v. Hudson, 36 N.J. 549, 553, 178 A.2d 202 (1962). Consequently, an order which holds an application for attorneys' fees or costs in abeyance or which denies the application pending the completion of further discovery is not a final judgment. See In re Estate of Johnson, 240 N.J. Super. 134, 136, 572 A.2d 1163 (App.Div. 1990).
Although the order from which this appeal has been taken is interlocutory, the appeal has been fully briefed and argued. Moreover, we are satisfied that the interests of justice will be served by a decision of this court with respect to certain of the issues presented. Therefore, we grant plaintiff leave to appeal nunc pro tunc. See R. 2:4-4(b)(2). However, since the denial of defendants' applications for attorneys' fees and costs were without prejudice and contemplated further proceedings before the trial court, we dismiss defendants' cross appeals.
We conclude that the trial court erred in holding that it lacked jurisdiction over this matter. The court also erred in its further holding that defendants enjoy absolute immunity from a suit under § 1983 alleging a denial of federal constitutional rights in connection with a tax assessment. Since the trial court did not decide and the parties have not addressed whether plaintiff's allegations state a cause of action under § 1983, we do not pass upon this question. Finally, we agree with the trial court's holding that Chaiken may not be held liable under common law tort principles for negligence in rendering an opinion to Linden regarding the fair market value of plaintiff's property.

I
A plaintiff in a § 1983 action may recover both compensatory and punitive damages against any municipal official or employee responsible for a deprivation of federal constitutional rights, Smith v. Wade, 461 U.S. 30, 35-36, 103 S.Ct. 1625, 1629, 75 L.Ed.2d 632, 638-39 (1983); Carey v. Piphus, 435 U.S. 247, 254-57, 98 S.Ct. 1042, 1047-49, 55 L.Ed.2d 252, 259-60 (1978), and also may recover compensatory, but not punitive, damages against a *457 municipality. Newport v. Facts Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). In addition, a prevailing party in an action under § 1983 may recover attorneys' fees. 42 U.S.C. § 1988; see Farrar v. Hobby, ___ U.S. ___, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).
"State courts as well as federal courts have jurisdiction over § 1983 cases," Howlett v. Rose, 496 U.S. 356, 358, 110 S.Ct. 2430, 2433, 110 L.Ed.2d 332, 342 (1990), and "[t]he existence of this jurisdiction creates an implication of duty to exercise it." Id. at 369-70, 110 S.Ct. at 2439-40, 110 L.Ed.2d at 349 (quoting Mondou v. New York, N.H. & H.R. Co., 223 U.S. 1, 58, 32 S.Ct. 169, 178, 56 L.Ed. 327, 349 (1912)). § 1983 is enforceable in state courts "not because Congress has determined that federal courts would otherwise be burdened or that state courts might provide a more convenient forum ... but because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature." Id. at 367, 110 S.Ct. at 2438, 110 L.Ed.2d at 347. Therefore, New Jersey is required to provide a forum in which a party may seek the full range of remedies authorized by § 1983.
However, in exercising jurisdiction over § 1983 claims, "[t]he States ... have great latitude to establish the structure and jurisdiction of their own courts." Id. at 372, 110 S.Ct. at 2441, 110 L.Ed.2d at 351. Relying upon this principle, the Law Division held that it lacked jurisdiction over plaintiff's § 1983 claims because they relate to a tax assessment and thus are within the Tax Court's exclusive jurisdiction.
The legislation creating the Tax Court, L. 1978, c. 33, conferred jurisdiction upon that court "to hear and determine all tax appeals of such character as [had previously been] heard and determined by the Division of Tax Appeals," N.J.S.A. 2A:3A-3 (repealed by L. 1993, c. 74, § 3), formerly an administrative agency in the executive branch of government, L. 1978, c. 33, § 3. The Tax Court's jurisdiction was limited under this legislation to the "[r]eview of actions ... of the county board of taxation or the Director of the *458 Division of Taxation." N.J.S.A. 2A:3A-4.1(a) (repealed by L. 1993, c. 74, § 3). This legislation also provided:
The tax court, in all causes within its jurisdiction, and subject to law, may grant legal and equitable relief so that all matters in controversy between the parties may be completely determined.
[N.J.S.A. 2A:3A-4(a) (repealed, now N.J.S.A. 2B:13-3(a).]
In Alid, Inc. v. Township of North Bergen, 180 N.J. Super. 592, 436 A.2d 102 (App.Div. 1981), we narrowly construed N.J.S.A. 2A:3A-4(a) as only authorizing the Tax Court to hear "equitable defenses and counterclaims" in cases otherwise within its jurisdiction. Id. at 601, 436 A.2d 102 (quoting Donnelly v. Ritzendollar, 14 N.J. 96, 103, 101 A.2d 1 (1953)). Consequently, we held that the Tax Court had no jurisdiction over an action in lieu of prerogative writs even if it related to a tax matter. The Supreme Court dismissed an appeal from our decision as moot, but impliedly approved our interpretation of N.J.S.A. 2A:3A-4(a) by ordering that "when relief in lieu of prerogative writ is sought with respect to any matter then pending in the Tax Court involving a state or local tax, including enforcement of an order or judgment of the Tax Court or county board of taxation, the action shall be transferred to the Superior Court, Law Division." Alid, Inc. v. Township of North Bergen, 89 N.J. 388, 388-89, 446 A.2d 126 (1981).[1]
Given the limitations upon its jurisdiction imposed by N.J.S.A. 2A:3A-3 and N.J.S.A. 2A:3A-4.1(a), the Tax Court lacked the authority to award the full range of remedies authorized by § 1983. Although the Tax Court could correct an assessment made in violation of federal constitutional rights, see Township of West Milford v. Van Decker, 120 N.J. 354, 576 A.2d 881 (App.Div. 1990), thereby providing a taxpayer with part of the equitable relief available in a § 1983 action, its jurisdiction would not extend *459 to awarding compensatory and punitive damages against a tax assessor or other public official who had violated a taxpayer's constitutional rights or granting equitable relief broader in scope than the simple correction of an erroneous tax assessment.[2]
Defendants argue that plaintiff is precluded in any event from maintaining a § 1983 action in a state court because an appeal to the Tax Court seeking the correction of the alleged erroneous tax assessment constitutes an adequate remedy. Defendants rely upon a line of state court decisions which hold that a § 1983 action for an alleged violation of federal constitutional rights relating to a tax assessment is not maintainable in a state court if the state provides a "plain, speedy and efficient" remedy *460 for the erroneous assessment. See, e.g., Zizka v. Water Pollution Control Auth., 195 Conn. 682, 490 A.2d 509, 513-14 (1985); Vann v. DeKalb County Bd. of Tax Assessors, 186 Ga. App. 208, 367 S.E.2d 43 (1988); Stufflebaum v. Panethiere, 691 S.W.2d 271 (Mo. 1985); State v. Quill Corp., 500 N.W.2d 196 (N.D.), cert. denied, ___ U.S. ___, 114 S.Ct. 173, 126 L.Ed.2d 132 (1993); Linderkamp v. Bismarck Sch. Dist. No. 1, 397 N.W.2d 76 (N.D. 1986); L.L. Bean v. Bracey, 817 S.W.2d 292, 294-97 (Tenn. 1991). These cases are based upon the Federal Anti-Injunction Act, 28 U.S.C.A. § 1341, which provides that "[t]he [federal] district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State," and the Supreme Court's holding in Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 116, 102 S.Ct. 177, 186, 70 L.Ed.2d 271, 283 (1981) that even when § 1341 does not directly apply, "taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts." These cases reason that although § 1341 and McNary only impose limitations upon the power of federal district courts, "a § 1983 challenge which could not be brought in federal court should not be allowed in a state court," in order to maintain uniform results in federal and state courts. Linderkamp v. Bismarck Sch. Dist. No. 1, supra, 397 N.W.2d at 78-79.
We reject this reasoning and hold that neither the Tax Injunction Act nor the comity rationale of McNary apply to a § 1983 action in state court. The Tax Injunction Act only limits the authority of a federal district court to grant injunctive relief regarding the "assessment, levy or collection" of a tax imposed under state law. It does not in any way limit the power of a state court. Likewise, nothing in McNary suggests that a taxpayer is precluded from maintaining a § 1983 action in state court based on a state tax official's alleged violation of federal constitutional rights. To the contrary, the maintainability of a § 1983 action in state court was an essential premise of the Court's holding in *461 McNary that a federal district court should not hear a taxpayer's § 1983 claims: "Such taxpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate and complete, and may ultimately seek review of the state decisions in this Court." Fair Assessment in Real Estate v. McNary, supra, 454 U.S. at 116, 102 S.Ct. at 186, 70 L.Ed.2d at 283. In fact, the Court noted that "the Missouri Supreme Court has expressly held that plaintiffs such as petitioners may seek a § 1983 claim in state court." Id. at 116, 102 S.Ct. at 186, 70 L.Ed.2d at 284, see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 122, 104 S.Ct. 900, 919, 79 L.Ed.2d 67, 92 (1984) ("Challenges to the validity of state tax systems under 42 U.S.C. § 1983 ... must be brought in state court.").
Moreover, if we were to hold that a § 1983 action is not maintainable in a state court solely because an alleged deprivation of constitutional rights relates to a tax assessment, it would mean that a tax assessor could engage in a practice of racially discriminatory tax assessments without being subject to personal liability under § 1983. Since the prevention of racial discrimination by state officials was the essential reason for the enactment of § 1983, see Mitchum v. Foster, 407 U.S. 225, 238-242, 92 S.Ct. 2151, 2160-62, 32 L.Ed.2d 705, 715-17 (1972), we are unwilling to read a limitation into the scope of its operation which would prevent a state court from granting complete relief, including compensatory and punitive damages, for such a violation of constitutional rights.
Our conclusion that a state must provide a forum for a § 1983 action alleging a denial of federal constitutional rights relating to a tax assessment is supported by the decisions of other state courts, see, e.g., Beverly Bank v. Board of Review, 117 Ill. App.3d 656, 72 Ill.Dec. 791, 453 N.E.2d 96 (1983), cert. denied, 466 U.S. 951, 104 S.Ct. 2153, 80 L.Ed.2d 539 (1984); Murtagh v. County of Berks, 535 Pa. 50, 634 A.2d 179 (1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1397, 128 L.Ed.2d 71 (1994), and by scholarly commentaries, *462 Steven H. Steinglass, Section 1983 Litigation in State Courts § 18.3 at 18-13 to 18-27 (Dec. 1994); Note, Clarifying Comity: State Court Jurisdiction and Section 1983 State Tax Challenges, 103 Harv.L.Rev. 1888, 1895-1908 (1990). In Murtagh v. County of Berks, supra, the court stated:
The Tax Injunction Act applies by its very terms to preclude federal courts, not state courts, from enjoining state tax schemes. Therefore, there is no danger of federal court interference or misunderstanding. Likewise, abstention based on comity has no application when a section 1983 cause of action is brought in state courts because there is no risk of federal court interference.
[634 A.2d at 181-82.]
Professor Steinglass notes:
[R]eliance on the Tax Injunction Act or comity to prohibit use of § 1983 to challenge state tax policies in state courts takes doctrines designed to encourage state courts to protect federal rights and turns them around to limit the power of state courts.
[Steinglass, supra, § 18.3(a) at 18-17.]
We recognize that the maintenance of a § 1983 action in a state court, as in a federal district court, may have "chilling effect" upon a tax assessor's performance of his official duties and may be "disruptive of [a state] tax system." Fair Assessment in Real Estate Ass'n v. McNary, supra, 454 U.S. at 113, 115, 102 S.Ct. at 184, 185, 70 L.Ed.2d at 281, 283. However, these dangers are not a sufficient basis for denying the remedies afforded by § 1983 to a party whose constitutional rights have been violated. Instead, the possibility of vexatious use of this kind of litigation can be substantially ameliorated by effective case management and the award of counsel fees to defendants in appropriate cases. To facilitate effective case management and avoid possible conflicting decisions, a § 1983 action in the Law Division relating to a tax assessment ordinarily should be assigned to the same Tax Court judge hearing a related tax assessment appeal. Such an assignment can be made pursuant to the Chief Justice's annual order assigning all Tax Court judges to the Superior Court. See, e.g., 137 N.J.L.J. at *463 1570 (Aug. 8, 1994).[3] In addition, the trial judge may stay proceedings in the § 1983 action until a related tax assessment appeal has been completed. Cf. Dean v. State, 250 Kan. 417, 826 P.2d 1372, cert. denied, ___ U.S. ___, 112 S.Ct. 2941, 119 L.Ed.2d 566 (1992); Nutbrown v. Munn, 311 Or. 328, 811 P.2d 131 (1991), cert. denied, 502 U.S. 1030, 112 S.Ct. 867, 116 L.Ed.2d 773 (1992); Hogan v. Musolf, 163 Wis.2d 1, 471 N.W.2d 216 (1991), cert. denied, 502 U.S. 1030, 112 S.Ct. 867, 116 L.Ed.2d 773 (1992); see generally, Steinglass, supra, at § 18.3(d).

II
As previously noted, the Law Division, after ruling that it lacked jurisdiction over plaintiff's § 1983 claims, nevertheless proceeded to consider defendants' immunity claims. Since we conclude that the Law Division has jurisdiction, we also address the court's further holding that defendants enjoy absolute immunity from suit under § 1983.
"The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." Burns v. Reed, 500 U.S. 478, 487, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547, 558 (1991). Consequently, an official seeking absolute immunity from suit under § 1983 "bears the burden of showing that such immunity is justified for the function in question." Ibid. "Not surprisingly," the Supreme Court has been "`quite sparing' in recognizing absolute immunity for state actors in this context." Buckley v. Fitzsimmons, ___ U.S. ___, ___, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209, 223 (1993) (quoting Forrester v. White, 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988).
*464 The threshold question in determining whether an official is entitled to absolute immunity under § 1983 is whether that immunity was recognized "at common law when the Civil Rights Act was enacted in 1871." Tower v. Glover, 467 U.S. 914, 920, 104 S.Ct. 2820, 2825, 81 L.Ed.2d 758, 765 (1984). The prevailing view in the nineteenth century was that tax assessors enjoyed only qualified rather than absolute immunity from suit. See, e.g., Bailey v. Berkey, 81 F. 737, 738 (N.D.Cal. 1897) ("[T]he greater and better weight of authority supports the doctrine that while assessors are not liable to private suits for mere errors or mistakes of judgment ..., they will be held liable in damages for making an excessive assessment with a malicious, corrupt, or other sinister motive."); Ballerino v. Mason, 83 Cal. 447, 23 P. 530, 530 (1890) (county assessor not liable for property assessment in absence of allegation that "he acted maliciously, or with intent to wrong or injure the owner"); Rowe v. Friend, 90 Me. 241, 38 A. 95, 96 (1897) (statute accords tax assessors immunity except for want of "personal faithfulness or integrity"); E. & T. Fairbanks & Co. v. Kittredge, 24 Vt. 9, 12 (1850) ("listers" that act as property appraisers and assessors incur no personal liability unless "actuated by malice"). Therefore, defendants have not established the firmly recognized immunity at common law required to support a claim of absolute immunity from suit under the Federal Civil Rights Act.
The trial court nevertheless concluded that a tax assessor is entitled to absolute immunity under § 1983 because he acts as "an arm of the legislature," thus qualifying for the absolute immunity of a legislator, see Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), and uses "his own independent judgment," thereby qualifying for the absolute immunity of a judge and other officials who act in a quasi-judicial capacity; see Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). However, a tax assessor's responsibilities are neither legislative nor judicial in nature and hence neither of these immunities applies.
*465 Legislative immunity only extends to official acts which are both "`procedurally' legislative, that is, passed by means of established legislative procedures," and "`substantively' legislative," that is, acts "which involve policy-making decision[s] of a general scope." Ryan v. Burlington County, 889 F.2d 1286, 1290-91 (3rd Cir.1989); accord Acierno v. Cloutier, 40 F.3d 597, 610-12 (3d Cir.1994). The assessment of plaintiff's property did not satisfy either of these tests because it did not involve public debate or a majority vote by a multi-member body, and it applied solely to plaintiff. Although a tax assessor performs official duties pursuant to legislative standards, the same is true of other executive officials who perform administrative functions beyond the protective umbrella of absolute legislative immunity. See, e.g., Cleavinger v. Saxner, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (prison disciplinary committee members); Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (school board members); Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (state executive officials, including governor and university president).
Judicial immunity only extends to the process of "resolving disputes between parties who have invoked the jurisdiction of a court," Forrester v. White, supra, 484 U.S. at 227, 108 S.Ct. at 544, 98 L.Ed.2d at 565 (1988), or a quasi-judicial tribunal performing an analogous function. Butz v. Economou, 438 U.S. 478, 511-14, 98 S.Ct. 2894, 2913-15, 57 L.Ed.2d 895, 919-21 (1978). A tax assessment does not involve any of the usual hallmarks of an adjudicatory proceeding; there is no presentation of evidence by affected parties, examination or cross-examination of witnesses, or findings of fact and conclusions of law. Instead, a tax assessor acts unilaterally based on his own examination of properties and public records in much the same fashion as executive officials who review applications for licenses and permits.
Our conclusion that tax assessors are not entitled to absolute immunity from suit under § 1983 is also supported by the decisions of other courts. In Fulton Mkt. Cold Storage Co. v. Cullerton, *466 582 F.2d 1071, 1080 (7th Cir.1978), cert. denied, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979), the court held that a tax official would be liable for damages under § 1983 "if he violated the plaintiff's clearly established constitutional rights intentionally or with reckless disregard of those rights." The court also stated that "[q]uite clearly, if a county or state tax official intentionally and unjustifiably raised an individual's property tax assessment merely because of the individual's race, ethnic background or political affiliation, the official could be liable for damages under § 1983 for the misuse of his authority." Id. at 1079. Similarly, in Werch v. City of Berlin, 673 F.2d 192, 195 (7th Cir.1982), the court indicated that municipal officials exercising taxing authority were entitled to "qualified immunity." See also Ludwin v. City of Cambridge, 592 F.2d 606, 610 n. 1 (1st Cir.1979).
Since the absolute immunity of defendant Chaiken, the consultant retained by Linden to assist in the assessment of plaintiff's property, was derivative of the tax assessor's claimed absolute immunity, see Dennis v. Sparks, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), which we have now rejected, we also conclude that the trial court erred in dismissing plaintiff's § 1983 claim against Chaiken on the basis of absolute immunity.
The tax assessor argues in the alternative that even if he does not have absolute immunity from suit under § 1983 for any action relating to an assessment, the summary judgment in his favor should be affirmed on the ground of qualified immunity. However, the trial court did not pass upon this argument. Although the court stated in a single conclusionary sentence in its written decision of February 22, 1993, that "even if this suit were maintainable because Frangella and Chaiken had only qualified immunity, this court is of the opinion that the plaintiff's proofs are nevertheless woefully inadequate and could not sustain a cause of action," the court subsequently characterized this statement as "dicta, unnecessary to its holdings which rested on legal insufficiency," that is, the court's lack of jurisdiction, and defendants' absolute immunity, rather than "factual insufficiency." Therefore, *467 although the individual defendants may be entitled to prevail on the basis of qualified immunity, we do not believe that this court should decide the availability of this defense summarily without the trial court first reviewing the relevant evidence. The trial court's consideration of this defense should be governed by the principles set forth in Harlow v. Fitzgerald, 457 U.S. 800, 815-19, 102 S.Ct. 2727, 2736-38, 73 L.Ed.2d 396, 408-11 (1982), Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411, 425 (1985), Malley v. Briggs, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271, 280-81 (1986) and Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523, 530-31 (1987); see also Kirk v. City of Newark, 109 N.J. 173, 536 A.2d 229 (1988).

III
We turn next to plaintiff's § 1983 claim against Linden. Although a municipality may not be held vicariously liable under the doctrine of respondeat superior for a claim under § 1983, it may be liable for a violation of constitutional rights committed by one of its officers or employees pursuant to official policy. Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Supreme Court in a plurality opinion identified "several guiding principles" to determine whether a deprivation of constitutional rights by a municipal official or employee was committed pursuant to municipal policy:
First, ... municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability. Third, whether a particular official has "final policymaking authority" is a question of state law. Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business.
[St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107, 118 (1988) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 480, 483, 106 S.Ct. 1292, 1298, 1300, 89 L.Ed.2d 452, 463, 465 (1986) (Brennan, J., plurality opinion).]
The Court also indicated that "an unconstitutional governmental policy [may] be inferred from a single decision taken by the *468 highest officials responsible for setting policy in that area of the government's business." Id. at 123, 108 S.Ct. at 924, 99 L.Ed.2d at 117; accord Pembaur v. Cincinnati, supra, 475 U.S. at 480, 106 S.Ct. at 1298, 89 L.Ed.2d at 464.
A tax assessor's deprivation of constitutional rights in assessing property may be found to constitute the official policy of the municipality which appointed the assessor. N.J.S.A. 54:4-23 confers plenary authority upon a tax assessor to "determine the full and fair value of each parcel of real property situate in the taxing district" and to "compute and determine the taxable value of such real property at the level established for the county pursuant to law." After the assessor makes an assessment, the municipality collects taxes based on that assessment and defends the assessment on any appeal to the county board of taxation or Tax Court. Thus, for purposes of property tax assessments, the acts of the tax assessor are the acts of the municipality. Consequently, a tax assessor has "final policymaking authority" with respect to municipal tax assessments and his violation of federal constitutional rights in making a tax assessment would constitute "a policy adopted by the official... responsible under state law for making policy in that area of the city's business." St. Louis v. Praprotnik, supra, 485 U.S. at 123, 108 S.Ct. at 924, 99 L.Ed.2d at 118. Moreover, plaintiff has alleged that the Mayor of Linden, the municipality's chief executive official, participated in the violation of its constitutional rights. Therefore, the trial court erred in dismissing plaintiff's complaint against Linden.

IV
We turn finally to plaintiff's common law negligence claim against Chaiken, the professional real estate appraiser retained by Linden to assist its tax assessor in valuing plaintiff's property. The Tort Claims Act confers broad immunity upon public entities and public employees from liability for their actions relating to the assessment and collection of taxes:
Neither a public entity nor a public employee is liable for an injury caused by:

*469 a. Instituting any judicial or administrative proceeding or action for or incidental to the assessment or collection of a tax.
b. An act or omission in the interpretation or application of any law relating to a tax.
[N.J.S.A. 59:7-2.]
Therefore, plaintiff could not maintain a tort action against either the tax assessor or Linden for negligence in the assessment of its property. Instead, plaintiff's only remedy to correct an error in its assessment would be an appeal to the Union County Board of Taxation or the Tax Court. N.J.S.A. 54:3-21.
Although the Tort Claims Act does not directly apply to Chaiken because he is not a public employee, N.J.S.A. 59:1-3, the same policy considerations which underlie the immunity provided by N.J.S.A. 59:7-2 also preclude a taxpayer from maintaining a negligence action against an outside consultant retained by a taxing authority to assist in a property appraisal. Our courts have recognized that the negligent performance of contractual services may provide a basis for tort liability to a third party. See, e.g., Rosenblum v. Adler, 93 N.J. 324, 461 A.2d 138 (1983). However, before a court recognizes such a cause of action, it must weigh "the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." Id. at 341, 461 A.2d 138 (quoting Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583, 186 A.2d 291 (1962)). When contractual services are performed for a governmental entity which is itself immune from tort liability for that activity, the courts should proceed with particular caution in recognizing a cause of action against a private contractor which may undermine the governmental immunity. Cf. Vanchieri v. New Jersey Sports & Exposition Auth., 104 N.J. 80, 85, 514 A.2d 1323 (1986) ("[I]ndependent contractors do, under well-recognized principles, share to a limited extent the immunity of public entities with whom they contract."); see also Ornes v. Daniels, 278 N.J. Super. 536, 541-42, 651 A.2d 1040, 1043 (App.Div. 1994).
A taxpayer has a readily available and adequate means of correcting an erroneous tax assessment by appealing to the county *470 board of taxation and the Tax Court. N.J.S.A. 54:3-21; see Union City Assoc. v. City of Union, 115 N.J. 17, 556 A.2d 769 (1989). Indeed, that is a taxpayer's only remedy when an assessor makes an assessment without the assistance of an outside appraiser. Consequently, a taxpayer has no substantial need to maintain a tort action against a private appraiser. On the other hand, the consultants who perform these kinds of services and the public entities which retain them have a substantial interest in maintaining immunity from suit outside the framework of normal tax appeals. A municipality's tax assessments involve numerous properties and very substantial amounts of money. Consequently, if outside consultants who assist in the performance of this duty were subject to suit for negligence, their exposure would be substantial. This undoubtedly would cause such experts to increase the fees they charge to municipalities, thereby increasing the cost of municipal tax assessments and also discouraging municipalities from using outside experts in circumstances where their services may be needed. Therefore, the trial court correctly held that a taxpayer may not maintain a tort action against an appraiser who is negligent in advising a tax assessor as to the value of a taxpayer's property.
Accordingly, we affirm the dismissal of plaintiff's common law negligence claim against Chaiken, but reverse the dismissal of plaintiff's § 1983 claims. Defendants' cross appeals are dismissed. We remand to the Law Division for further proceedings in conformity with this opinion and direct that the case be assigned to the Tax Court judge who is hearing plaintiff's tax assessment appeals.
NOTES
[1] We note that a taxpayer may challenge the validity of a state tax under the United States Constitution in the New Jersey courts without proceeding under the Federal Civil Rights Act. See, e.g., Salorio v. Glaser, 82 N.J. 482, 414 A.2d 943, cert. denied, 449 U.S. 874, 101 S.Ct. 215, 66 L.Ed.2d 94 (1980).
[2] Subsequent to the trial court's decision in this case, the Legislature expanded the Tax Court's jurisdiction to include the review of any action or regulation of any state, county or municipal official relating to a "tax matter," N.J.S.A. 2B:13-2(a), as well as "actions cognizable in the Superior Court which raise issues as to which expertise in matters involving taxation is desirable," N.J.S.A. 2B:13-2(b); L. 1993, c. 74, § 1. These provisions may now provide the requisite authorization for the Tax Court to entertain a § 1983 action and to award the full range of remedies available in such an action, including compensatory and punitive damages. However, the trial court did not have the opportunity to pass upon the effect of this new legislation and the parties have not even cited N.J.S.A. 2B:13-2 in their appellate briefs. Furthermore, this legislation does not provide for the transfer to the Tax Court of pending actions which were beyond the Tax Court's jurisdiction under the former N.J.S.A. 2A:3A-3 and N.J.S.A. 2A:3A-4.1(a) but are now subject to its jurisdiction under N.J.S.A. 2B:13-2. Compare N.J.S.A. 2A:3A-26, part of the legislation creating the Tax Court, which transferred all cases then pending in the former Division of Tax Appeals to the Tax Court. Therefore, our decision is based solely on the legislation which governed the Tax Court's jurisdiction at the time of the trial court's decision. See Sutherland Stat. Const. § 41.08 (5th ed. 1993) ("[C]ourts do not favor interpretations of jurisdictional statutes which give them retroactive effect.").

We note that even if N.J.S.A. 2B:13-2 were applicable to this action, the only consequence would be that the Tax Court judge to whom we have ordered the case assigned would hear the matter as a Tax Court rather than a Superior Court judge. We also note that the validity of defendants' argument that a § 1983 action for an alleged violation of federal constitutional rights relating to a tax assessment is not maintainable in a state court, discussed on pp. 459-63 of this opinion, does not turn on the scope of the Tax Court's jurisdiction as a matter of state law.
[3] If the Tax Court now has jurisdiction under N.J.S.A. 2B:13-2 to entertain a § 1983 action relating to a tax assessment, see n. 2 supra, such an assignment may be made without reliance upon the Chief Justice's order.