**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1415-19

FEDERAL NATIONAL
MORTGAGE ASSOCIATION,

    Plaintiff-Respondent,

v.

KATHLEEN HALBERT,

    Defendant-Appellant.

_____

Submitted March 10, 2021 – Decided April 9, 2021

Before Judges Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. LT-1173-19.

Eduardo J. Jimenez, attorney for appellant.

Stern, Lavinthal & Frankenberg, LLC, attorneys for respondent (Laura A. Scurko, of counsel and on the brief).

PER CURIAM

Defendant Kathleen Halbert appeals from an October 23, 2019 order granting plaintiff Federal National Mortgage Association a judgment of eviction. More particularly, she appeals from that part of the order directing that plaintiff pay her $9,000 for nine-months' rent she paid prior to the eviction "because the premises ha[d] been uninhabitable since January of 2019."[1] Defendant claims the court erred by limiting plaintiff's liability for the return of rent to only the nine months following January 2019 because the court found, and the evidence established, the home she rented from plaintiff became uninhabitable one year earlier, in January 2018. We affirm the order granting a judgment of eviction and we remand for the court to enter an amended judgment awarding defendant an additional sum for rent paid during the 2018 calendar year.

In pertinent part, the evidence at the trial on plaintiff's complaint for eviction established defendant had been a tenant at the two-story home in Lake

_____

[1] The final order directed that plaintiff pay defendant a total of $10,320. The amount included reimbursement for $1,320 in emergency repairs defendant made to the premises in January 2018. Plaintiff does not challenge the court's calculation of the amount of the emergency repairs or the court's award of $1,320 for them. We therefore limit our discussion to the court's $9,000 award for rent defendant paid during the time the property was uninhabitable. On appeal, defendant argues only that the amount of rent awarded is inadequate and not supported by the evidence at trial.

A-1415-19

Hopatcong since 1999.[2]  Plaintiff took title to the property in 2015 as the result of a foreclosure proceeding.  During all times relevant to the issues presented on appeal, plaintiff charged defendant $1,000 per month in rent.

In a December 1, 2016 letter to plaintiff's counsel, defendant's counsel identified fourteen "defective conditions" that he asserted rendered the home "uninhabitable."  They included damage to the property from pipes that burst due to cold weather, a leaking hot water heater, a septic tank that required cleaning in accordance with "the town ordinance," two of three bathrooms that did not function, and an inoperable oven, dishwasher, washer-dryer.  The letter requested remediation of the conditions, but plaintiff did not take any action in response to the request.

In a November 28, 2017 letter to plaintiff's counsel, defendant's counsel noted that "[n]o response was ever received" to his prior letter, and he again requested remediation of the defective conditions. Defendant's counsel further identified repairs he asserted should "be considered emergency items" that should "be addressed urgently."  He explained the home was without hot water because "the hot water heater stopped working completely"; the pipes in the

---

[2]  The sparse descriptions of the home provided during trial refer to a garage, basement, first floor, and second floor.

garage required insulation so they would not burst in cold weather; the oven and two burners on the stovetop were inoperable; and the septic tank required cleaning in accordance with the Jefferson Township Municipal Code. In a January 4, 2018 letter, plaintiff's counsel responded, stating plaintiff had assigned a local real estate agent to review the property for repairs.

Four days later, on January 8, 2018, the pipes in the home's garage burst, and water streamed into the first floor and basement. Defendant paid a plumber $1,200 to shut off the water to the home and divert the flow of water within the home to avoid further flooding. When the pipes burst, the septic system also overflowed, causing sewage to flow into the first floor. On January 9, 2018, defendant's counsel notified plaintiff's counsel by email that the pipes had burst and sewage flowed into the home.[3] Plaintiff did not take any action in response to counsel's January 9, 2018 notice.

In an April 10, 2018 email, defendant's counsel notified plaintiff's counsel the basement of the home was "still flooded," "mold continue[d] to build on the

---

[3] The letter also stated defendant would deduct from the rent the amount she paid for emergency repairs. It does not appear defendant deducted the costs of the emergency repairs, which totaled $1,320, from the rent. As noted, the court awarded defendant $1,320 for the emergency repairs, and plaintiff does not challenge that award on appeal.

walls and [was] a health hazard," and "the septic tank ha[d] still not been cleaned and . . . [was] inoperable."

Plaintiff took no action to address the conditions at the property. Defendant then notified Jefferson Township of the conditions at the home. On May 8, 2018, Township Fire Marshall Vincent Corsaro inspected the property. He testified at trial that he found the home "unsanitary for human occupancy, due to the septic backup," and that the home was "unfit[] and should not be occupied." He explained there was mold on the first floor "three to four feet up the wall." Corsaro also observed a collapsed ceiling in the garage, mold in the garage and the home's interior walls, standing water on the home's first floor, and bathrooms covered with septic waste.

Corsaro issued a May 8, 2018 notice of violation to plaintiff alleging the home was unsafe for human occupancy. The notice identified conditions creating an "imminent hazard" within the home, including: the septic system backup; the lack of hot water and insulation; a non-functioning stove and heating system; and a broken water pipe that caused water "to pump onto the floor." Corsaro testified he was unaware of any repairs made by plaintiff that justified a later re-inspection of the home.

5

Raimonds Erins is a real estate broker who began serving as plaintiff's agent for the property in February 2019. He testified that based on his review of the records, plaintiff permitted the property to become unfit for human occupancy in January 2018, and it was his "understanding . . . the property was likely uninhabitable before that." Based on his review of reports annexed to plaintiff's complaint, Erins was aware two licensed environmental remediation companies "went to the property." He did not know when they went to the home and he did not describe the purpose of their visits. He testified "[t]hey didn't have full access to the home, only the lower level," and he stated they were denied access to the second floor of the home by the "occupants." According to Erins, the companies found "extremely extensive" mold, and they determined the home would have to be vacant for the mold to be remediated.

Erins testified plaintiff denied defendant's request for temporary relocation during the time necessary to repair the home and remediate the mold. He explained that on March 8, 2019, plaintiff served defendant with a notice to quit. The notice asserted defendant must vacate the premises in accordance with N.J.S.A. 2A:18-61.1(g) to permit plaintiff to comply with Jefferson Township's determination the "property is in an unsanitary condition for human occupancy and it is unfeasible" to remediate the condition "without removing the tenant."

6

Defendant testified concerning the condition of the property following the January 8, 2018 incident during which the pipes burst. She explained there were no working bathrooms in the home, and that the toilet on the second floor where she continued to reside could be used only if she poured water into it. She explained the home had no heat, water continued to flow into the first floor and basement, and mold continued to grow on the walls. She also testified she wanted to stay on the property because it was her home, and she believed plaintiff's effort to evict her was in retaliation for her May 2018 complaint to Jefferson Township about the condition of the property and plaintiff's failure to respond to her requests for repairs.

Plaintiff's counsel asked defendant about a note in a report from a mold remediation company stating the "customer would not let us inspect the first floor of the home." Defendant testified the inspector went into the basement of the home and "never asked to go upstairs," and she did not recall "them asking to go upstairs." Defendant denied ever refusing access to the home to any inspector or representative assessing the property's condition.

Following the presentation of evidence and the summations of counsel, the court rendered a decision from the bench. The court found the "home is simply uninhabitable," and that "[i]t makes no sense for [defendant] to live on

7

the second floor, [and] put water in the toilet so it flushes." The court found the home "beyond disgusting," and determined the "believable evidence" established the "property should be vacated due to mold remediation" and that "[t]here's no question . . . the place has to be emptied."

The court observed "it doesn't make any sense, health-wise," for anyone to live in the home, the "situation is a long-standing situation," and "no one should live like this." The court also found there had not been any remediation at the home, and defendant could not "live there." The court ordered defendant to vacate the home and granted plaintiff's request for an order of eviction pursuant to N.J.S.A. 2A:18-61.1(g)(2), which permits removal of a tenant where the landlord "seeks to comply with local or State housing inspectors who have cited [the landlord] for substantial violations affecting the health and safety of tenants and it is unfeasible to so comply without removing the tenant."

The court also determined plaintiff was entitled to a return of rent paid. See Berzito v. Gambino, 63 N.J. 460, 469 (1973) (allowing a landlord to charge only the "reasonable rental value of . . . property in its imperfect condition" where the landlord breaches the implied warranty of habitability). The court, which rendered its decision on September 26, 2019, found "that since January of last year, . . . defendant[] [has] really suffered an uninhabitable situation,"

8

and "she's been paying the rent."  While addressing defendant's request for an attorney's fee award, the court found defendant's payment for attorney's fees was "another damage she has sustained, and [defendant] shouldn't have," because "[t]his place should have been fixed back in January, when she sent that notice, when the pipes burst."[4]

The court then concluded that, as a condition of defendant vacating the premises, plaintiff must reimburse defendant for the rent she paid for the nine-month period from January 2019 through the September 2019 trial.  The court did not offer a reason for limiting the rental reimbursement to that period.  The court entered a final order directing that defendant vacate the home and requiring that plaintiff pay $9,000 as reimbursement for nine-months' rent.  This appeal followed.

---

[4]  The October 23, 2019 order from which defendant appeals "authorized" her counsel to submit a fee application.  Defendant's counsel advises that he opted not to submit a fee application to the trial court.  The order is not final and appealable as of right under Rule 2:2-3(a)(1) because it allowed for the filing of a fee application.  See General Motors v. City of Linden, 279 N.J. Super. 449, 455-56 (App. Div. 1995), rev'd on other grounds, 143 N.J. 336 (1996).  Plaintiff does not argue the appeal should be dismissed because the order is not final, and the parties have fully addressed the merits of defendant's challenge to the order.  Under these circumstances, we consider defendant's notice of appeal as a motion for leave to appeal, see R. 2:2-3(b), and grant the motion nunc pro tunc.

A-1415-19

Our review of a judge's findings of fact following a bench trial are limited. We will not reverse a judge's fact findings "if they are supported by 'adequate, substantial, and credible evidence,'" Town of Kearny v. Brandt, 214 N.J. 76, 92 (2013) (citation omitted), and we will not reverse fact findings "unless . . . 'they are so wholly insupportable as to result in a denial of justice,'" Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974) (citation omitted). We accord no deference to the "trial court's interpretation of the law and the legal consequences that flow from established facts" and apply a de novo standard of review. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Defendant raises a narrow issue on appeal. She does not challenge the court's order requiring that she vacate the property pursuant to N.J.S.A. 2A:18-61.1(g), or the court's rejection of her claim the eviction was retaliatory. Instead, she argues only that the court erred by limiting her recovery of rent paid to the nine-month period prior to trial. She contends she is entitled to a return of rent paid while the home was uninhabitable and that the court's award is not supported by the evidence, which shows the property was uninhabitable for the twenty-one-month period commencing on January 8, 2018, when the pipes burst in the home.

Plaintiff argues defendant ignores that the final order includes a finding that "[t]he believable evidence was that [defendant] and her caretaker/partner prevented any meaningful inspection resulting in the inability of [plaintiff] to effectively resolve the long-standing repair issues which have rendered the premises uninhabitable."[5] Plaintiff argues that finding supports the court's decision limiting the return of rent to the nine-month period beginning in January 2019. In other words, plaintiff contends the court found defendant was not entitled to a return of rent during the period of time she prevented plaintiff from conducting the inspections necessary to assess and address the conditions that rendered the property uninhabitable.

In every lease for premises there is an implied warranty of habitability, which is a covenant that "there are no latent defects in facilities vital to the use of the premises" and that the premises shall be "in usable condition during the entire term of the lease." Marini v. Ireland, 56 N.J. 130, 144 (1970). "Habitability is synonymous with suitability for living purposes . . . ." Aronsohn v. Mandara, 98 N.J. 92, 104 (1984) (citing Trentacost v. Brussel, 82 N.J. 214, 225 (1980)). The premises must be occupiable; for example, there

---

[5] It appears defendant shared the home with an individual who served as defendant's caretaker.

must be sufficient heat, ventilation, light, plumbing, sanitation, security, and maintenance. Ibid. (quoting Trentacost, 82 N.J. at 225). "Not every defect or inconvenience will be deemed to constitute a breach of the covenant of habitability." Berzito, 63 N.J. at 469. The defect or problem "must be such as truly to render the premises uninhabitable in the eyes of a reasonable person." Ibid.

Here, the trial court generally described the condition of the property and found it uninhabitable, and it made express findings defining the period during which the property was uninhabitable. The judge found defendant suffered from an "uninhabitable situation" "since January of last year." The judge rendered his decision in September 2019, and it therefore can only logically be concluded he found the property uninhabitable since January 2018. The judge also found defendant was entitled to an attorney's fee award because the property should have been repaired "back in January, when [defendant] sent that notice, when the pipes burst." The references to January, the notice, and the pipes bursting pertain to January 2018 because the evidence established the pipes burst on January 8, 2018, and defendant's counsel sent a January 9, 2018 notice about the uninhabitability of the property. In addition, the overwhelming evidence,

12

including the testimony of plaintiff's agent Erins, established the property was unfit for human habitation after the pipes burst on January 8, 2018.

We fairly read the court's decision to include a determination that defendant is entitled to a return of rent paid during the period the home was uninhabitable.[6]  See ibid. (holding the implied warranty of habitability and covenant to pay rent are "mutually dependent").  Thus, the court's determination the property became uninhabitable in January 2018 cannot be logically reconciled with its decision to award the return of rent only for the nine-month period beginning in January 2019.  The record is bereft of evidence of any event occurring in January 2019 that affected the habitability of the property or that might be relevant to a determination of the rent that should be returned due to the property's inhabitability.  The evidence established, and the court expressly found, the deplorable conditions extant at the property rendered it uninhabitable in January 2018, and those conditions were never remediated by plaintiff.  As a

---

[6] Implicit in the court's determination that defendant is entitled to a return of all rent paid while the home was uninhabitable is a finding that, despite defendant's continued residence on the second floor of the home, the conditions were so deplorable that the property had no reasonable rental value.  See, e.g., C.F. Seabrook Co. v. Beck, 174 N.J. Super. 577, 595 (App. Div. 1980) ("The tenant of a dwelling affected by serious defects which impair habitability must pay the reasonable rental value only.").  Plaintiff does not challenge the court's finding and determination on appeal.

result, there is no evidentiary support for the court's inexplicable and unexplained decision to limit the return of rent to defendant to the nine-month period between January 2019 and the trial in September.

We reject plaintiff's claim the court's decision to limit defendant's recovery of rent to the nine-month period prior to trial is supported by its finding, set forth in the final order, that defendant prevented any meaningful inspection of the property by plaintiff and therefore rendered plaintiff unable to resolve the habitability issues. Plaintiff argues "the [c]ourt found that . . . [d]efendant effectively prevented [p]laintiff from addressing the damage to the [p]roperty, and awarded nine months of a rent rebate."

Plaintiff claims the court's finding is supported by Erins's testimony that two mold remediation contractors were denied full access to the home. There is no evidence Erins was present when the contractors appeared at the property, and his testimony concerning the alleged denial of access was based on his review of reports that were attached to plaintiff's complaint. Thus, he repeated only what was set forth in the reports when he testified the contractors were denied full access to the house by the "occupants."

In fact, attached to plaintiff's complaint are reports from a number of contractors, and only one report from a mold remediation contractor states,

A-1415-19

"THE CUSTOMER WOULD NOT LET US INSPECT THE FIRST FLOOR." The reports from the other contractors, including a second mold remediation contractor, do not reflect any purported denial of access to the property. In addition, the report stating that the "customer" denied access does not identify defendant as the "customer," and makes no mention of defendant at all.

In any event, even assuming on one occasion defendant denied a mold remediation contractor access to the full house, plaintiff presented no evidence that such a denial prevented plaintiff from addressing the numerous and varied deplorable conditions on the property, including the presence of mold, that rendered the home unfit for human habitation for the twenty-one months prior to trial. The court's finding that defendant prevented plaintiff from remediating the conditions at the property is not supported by "adequate, substantial, and credible evidence." Town of Kearny, 214 N.J. at 92 (citation omitted). Thus, contrary to plaintiff's assertion, the court's finding does properly support it decision to limit defendant's recovery of rent to the nine-month period prior to trial.

In sum, we affirm the court's order directing that defendant vacate the property and requiring plaintiff to pay defendant $9,000 for the rent paid from January through September 2019. We remand for the court to determine the

amount of rent paid by defendant from January 2018 through December 2018, and for entry of an amended final judgment also awarding defendant the full amount of rent paid during that period.

Affirmed in part, remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

16 A-1415-19