NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3072-17T3

JUSTIN WILD,

      Plaintiff-Appellant,

v.

CARRIAGE FUNERAL
HOLDINGS, INC., d/b/a
FEENEY FUNERAL HOME,
LLC, DAVID B. FEENEY,
and GINNY SANZO,

      Defendants-Respondents.

_____

**APPROVED FOR PUBLICATION**

**March 27, 2019**

**APPELLATE DIVISION**

Submitted February 26, 2019 – Decided March 27, 2019

Before Judges Fisher, Hoffman and Suter.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0687-17.

The Mark Law Firm, LLC, attorneys for appellant (Jamison M. Mark, on the brief).

Ogletree, Deakins, Nash, Smoak & Stewart, PC, attorneys for respondents (Steven J. Luckner and Michael J. Riccobono, on the brief).

Zuckerman & Fisher, LLC, attorneys for amicus curiae National Employment Lawyers Association of New Jersey (Elizabeth Zuckerman, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

Plaintiff appeals the dismissal, pursuant to Rule 4:6-2, of his action against his former employer, defendant Carriage Funeral Holdings, Inc. (Carriage), and others, based on, among other things, the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. Plaintiff claims defendants' unlawful discrimination arose from his use of medical marijuana, permitted by the New Jersey Compassionate Use Medical Marijuana Act, N.J.S.A. 24:6I-1 to -16, as part of his cancer treatment. Critical to the issues presented, the Legislature's declaration that an authorized medical-marijuana user may not be criminally prosecuted included a declaration that "nothing" in the Compassionate Use Act "require[s]" an employer to accommodate a medical marijuana user, N.J.S.A. 24:6I-14. Based on that provision, defendants argued – and the motion judge held – that plaintiff's LAD action could not go forward. We disagree and hold that because the Compassionate Use Act declared it should not be construed to "require" an accommodation does not mean such a requirement might not be imposed by other legislation. N.J.S.A. 24:6I-14. In short, like the first law of thermodynamics, that provision – beyond its own limited criminal and regulatory context – neither creates nor destroys rights and

2

obligations.  So, we reject the essential holding that brings this matter here and conclude that the Compassionate Use Act's refusal to require an employment accommodation for a user does not mean that the Compassionate Use Act has immunized employers from obligations already imposed elsewhere.  It would be ironic indeed if the Compassionate Use Act limited the Law Against Discrimination to permit an employer's termination of a cancer patient's employment by discriminating without compassion.  We reverse.

I

Before we discuss that central issue, we briefly outline the procedural events that brought us here.  Plaintiff, a funeral director, originally sued only Carriage and unknown Carriage employees alleging various LAD violations and common-law defamation.  Carriage removed the matter to federal court and moved to dismiss for failure to state a claim upon which relief might be granted. In response, plaintiff cross-moved to amend his complaint to allege other LAD violations, to add common-law claims of intentional interference with prospective economic gain (intentional interference), and to join three Carriage employees as defendants.  The federal judge allowed plaintiff to expand his previously-pleaded defamation claim and to assert the intentional interference claim against two of the prospective defendants – David Feeney and Ginny

3

Sanzo – but denied the cross-motion to assert an intentional interference claim and an aiding and abetting claim against Norma Van Zile. Plaintiff then filed, as permitted, an amended complaint that added Feeney and Sanzo. Recognizing that the joinder of these defendants destroyed diversity, the federal judge remanded the action.

Once back in the Law Division, plaintiff filed a second amended complaint containing the following claims:

- LAD disability discrimination against Carriage;

- LAD disability discrimination and failure to accommodate against Carriage;

- LAD perceived disability discrimination and failure to accommodate against Carriage;

- LAD perceived disability discrimination against Carriage;

- LAD aiding and abetting against Feeney and unidentified defendants;

- defamation against Feeney and Sanzo;

- intentional interference against Carriage, Feeney and Sanzo.

Defendants swiftly moved under Rule 4:6-2(e) to dismiss the second amended complaint.

4

For reasons expressed in a written opinion, the judge granted defendants' motion and dismissed the second amended complaint without prejudice. The parties then sought clarification, and the judge entered an order that dismissed the LAD claims with prejudice and the defamation and intentional interference claims without prejudice.

Plaintiff filed a notice of appeal,[1] and now argues, among other things, that the judge erred: in dismissing the LAD claims by holding the Compassionate Use Act does not foreclose an employer's right to terminate an employee for medical marijuana use; in dismissing the aiding and abetting claims because he found there was no LAD actionable claim that could be

---

[1] Because the judge dismissed the defamation and intentional interference claims without prejudice, we recognize that – despite what plaintiff claims – finality was not achieved in the trial court and plaintiff was mistaken when he filed a notice of appeal rather than a motion for leave to appeal. See Grow Co. v. Chokshi, 403 N.J. Super. 443, 460 (App. Div. 2008). By the time the court came to this realization, however, the matter had been fully briefed and was placed on a plenary calendar for disposition. We also note that we do not face an artifice for creating appellate jurisdiction; instead, the parties sought clarification from the trial judge to ascertain whether he had intended to fully dispose of all issues despite the "without prejudice" designation. In these circumstances and in the interests of justice, we have determined to consider the merits of this appeal despite its prematurity. Gen. Motors Corp. v. City of Linden, 279 N.J. Super. 449, 455-56 (App. Div. 1995), rev'd on other grounds, 143 N.J. 336 (1996).

asserted against Carriage; and in determining that plaintiff failed to sufficiently plead his defamation and intentional interference claims.

We next consider the collection of plaintiff's LAD claims and their relationship to the Compassionate Use Act, and thereafter, address the dismissal of the defamation and intentional interference claims.

II

A

In reviewing a dismissal for failing to state a claim upon which relief may be granted, we apply the same standard that bound the trial judge and, therefore, "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, [giving] opportunity . . . to amend if necessary." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)); see also Major v. Maguire, 224 N.J. 1, 26 (2016). At such a stage, courts are unconcerned with the plaintiff's ability to prove what is alleged, and instead consider only whether – after giving plaintiff the benefit of "every reasonable inference of fact," Printing Mart, 116 N.J. at 746 – a sustainable claim has been

pleaded. This examination is "painstaking and undertaken with a generous and hospitable approach." Ibid.

We thus examine the judge's dismissal of the LAD claims by assuming the truth of the following factual allegations and by drawing reasonable inferences that suggest a cause of action.

B

Plaintiff filed a detailed second amended complaint, which contains numerous specific allegations and recounts statements made by some of the parties during the relevant events.

Plaintiff alleged that, in 2013, he began working for Carriage as a licensed funeral director. The job required, among other things, that plaintiff direct funerals, engage in visitations, perform embalming, "cosmetize" the deceased, prepare death certifications, conduct religious services at gravesites, and drive the funeral home's hearse and other vehicles.

In 2015, plaintiff was diagnosed with cancer. As part of his treatment, his physician prescribed marijuana as permitted by the Compassionate Use Act.

In May 2016, while working a funeral, a vehicle plaintiff was driving was struck by a vehicle that ran a stop sign. Sustaining injuries, plaintiff was taken by ambulance to a hospital emergency room.

7

At the hospital, plaintiff advised a treating physician that he had a license to possess medical marijuana. The physician responded that "it was clear [plaintiff] was not under the influence of marijuana, and therefore no blood tests were required."[2] After being examined, plaintiff was given pain medication and sent home. Once home, plaintiff took his prescribed pain medication and used medical marijuana.

While plaintiff rested, his father took plaintiff's medical prescription and licenses to Carriage and advised Feeney "that the emergency room doctor had refused to perform a blood test on [plaintiff] because 'he would not be liable for forcing a blood test,' and knowing that [plaintiff] had a legal prescription and was permitted to use marijuana, 'of course it will be in his system.'" Plaintiff's father also told Feeney that "the doctor stated he did not feel that [plaintiff] was under the influence of any alcohol or drugs when he was brought in to the hospital, and there was no need for a drug test."

Later that day, Feeney called and spoke to plaintiff's father to advise that a blood test was required before plaintiff could return to work. His father protested that "[plaintiff] was not under the influence at the time of [the]

---

[2] These and other statements recited throughout this section of the opinion are taken verbatim from the second amended complaint.

accident," that "the hospital determined he was not under the influence," and that "the [hospital] doctor . . . would not participate in any type of blood testing because [plaintiff's] drug test would test positive because the marijuana stays in one's system for 45 days."  Feeney said plaintiff would still have to go for the test.

At about 6:15 p.m. that evening, plaintiff appeared for a blood test at an urgent care facility.  There, the physician opined that "testing [plaintiff] was illegal, and he warned that the results would be positive due to the marijuana and the prescription pain killers taken after the accident."  In lieu of blood testing, the physician had plaintiff take a urine and breathalyzer test.  Plaintiff was never given the results of those tests, and the results are not in the record.

The next day, plaintiff returned to the funeral home, not as an employee, but because a close friend's family member died.  While there, he and Feeney spoke briefly about his job status.  Feeney stated that he had not heard anything from corporate and advised that he "d[id]n't know what Carriage was going to do or what they'll say," although he "th[ought] everything should be fine" because plaintiff had "a legal prescription."  In short, Feeney said, "he d[id]n't see a problem with it," so "you should be fine."

Plaintiff alleged that Feeney also asked him: "how do you use it?" Plaintiff replied, "[w]hen you go home, you have a drink or a cocktail. I eat it, or that is how the doctors tell me to take it, or you can smoke it." Plaintiff told Feeney, "I only take it when I am home, not at work because I don't want to jeopardize my license for what I have worked so hard for." And he told Feeney that without this medication, he would have severe pain throughout the day. Feeney told plaintiff to "[g]o home, and get better," and that he would be on the calendar for a funeral the following week. He also told plaintiff he would have another director assist him.

As planned, plaintiff worked a funeral the following week for approximately four hours. After, he told Feeney he was very sore and was going to go home to rest. He thanked Feeney for bringing in another director to assist.

Several days later, Feeney told plaintiff that "corporate" was unable to "handle" his marijuana use and that his employment was "being terminated because they found drugs in your system." Feeney also said he called Sanzo to tell her plaintiff had been terminated because of "drugs."

In a June 3, 2016 letter, "corporate" advised plaintiff he had been terminated not because of his drug use, but because he failed to disclose his use of medication, which might adversely affect his ability to perform his job duties.

A-3072-17T3

According to a Carriage policy, "employees must advise their immediate supervisor if they are taking any medication that may adversely affect their ability to perform assigned duties safely."

A couple of months after the termination of his employment, plaintiff's mother received a telephone call from someone who worked for another funeral home who said she heard plaintiff was fired because he was "a drug addict." When plaintiff's mother inquired further, this individual reported that she called plaintiff's former place of employment, was told plaintiff was fired for being a drug addict, and was told this rumor made the rounds at the Bergen County Funeral Directors' Association meeting.

C

Based on these allegations, plaintiff claimed Carriage could not lawfully terminate his employment without violating the LAD, despite the results of his drug test, because he had a disability (cancer) and was legally treating that disability, in accordance with his physician's directions and in conformity with the Compassionate Use Act. In granting defendants' motion to dismiss, the trial judge determined that the Compassionate Use Act "does not contain employment-related protections for licensed users of medical marijuana" and, in

11

accepting plaintiff's own allegations, the adverse employment action was taken due to a positive drug test and a violation of Carriage's drug use policy.

In 2010, our Legislature recognized that "[m]odern medical research has discovered a beneficial use for marijuana in treating or alleviating the pain or other symptoms associated with certain debilitating medical conditions," N.J.S.A. 24:6I-2(a), and so it enacted the Compassionate Use Act to decriminalize the use of medical marijuana. The Legislature clearly stated its purpose was

> to protect from arrest, prosecution, property forfeiture, and criminal and other penalties, those patients who use marijuana to alleviate suffering from debilitating medical conditions, as well as their physicians, primary caregivers, and those who are authorized to produce marijuana for medical purposes.
>
> [N.J.S.A. 24:6I-2(e).]

Consistent with these purposes, the Compassionate Use Act affords an affirmative defense to patients who are properly registered but are subsequently arrested and charged with marijuana possession. N.J.S.A. 2C:35-18. It also shields qualifying users from civil penalties and other administrative actions. N.J.S.A. 24:6I-6(b). But the Compassionate Use Act expressly says "[n]othing" that would "require . . . an employer to accommodate the medical use of marijuana in any workplace." N.J.S.A. 24:6I-14.

12

On the other hand, plaintiff alleges a disability that qualified his use of medical marijuana. And the LAD makes it unlawful "[f]or an employer, because of the . . . disability . . . of any individual, . . . to discharge . . . or to discriminate against such individual . . . in terms, conditions or privileges of employment," N.J.S.A. 10:5-12(a), "unless the nature and extent of the disability reasonably precludes the performance of the particular employment," N.J.S.A. 10:5-4.1; see also N.J.S.A. 10:5-2.1.

D

In considering the relationship between the Compassionate Use Act and the LAD, we start by rejecting plaintiff's argument that these enactments are in conflict. We reject that assertion because the Legislature plainly said there was no conflict; the Legislature's actual words bear repeating: "Nothing in this act shall be construed to require . . . an employer to accommodate the medical use of marijuana in any workplace." N.J.S.A. 24:6I-14. These words are unambiguous; they require no interpretation and permit no deviation. See DiProspero v. Penn, 183 N.J. 477, 492 (2005). Those words can only mean one thing: the Compassionate Use Act intended to cause no impact on existing employment rights. The Compassionate Use Act neither created new employment rights nor destroyed existing employment rights; it certainly

13

expressed no intent to alter the LAD.  Just as the Compassionate Use Act imposes no burden on defendants, it negates no rights or claims available to plaintiff that emanate from the LAD.[3]

Once the relationship of these legislative enactments is so understood, the matter boils down to a routine determination of whether plaintiff sufficiently stated one or more causes of action under the LAD.  For our purposes, one such claim is enough.  Oasis Therapeutic Life Ctrs., Inc. v. Wade, 457 N.J. Super. 218, 229 n.6 (App. Div. 2018).  As observed, the second amended complaint contains allegations that Carriage – aided and abetted by the individual

---

[3]  Our holding is similar to conclusions reached about other states' similarly-worded compassionate use acts. See Roe v. TeleTech Customer Care Mgmt. (Colo.) LLC, 257 P.3d 586, 591-92 (Wash. 2011) (construing Wash. Rev. Code Ann. § 69.51A.060(4)); Casias v. Wal-Mart Stores, Inc., 764 F. Supp. 2d 914, 921-22 (W.D. Mich. 2011) (construing Mich. Comp. Laws Ann. § 333.26427(c)(2)).  In both cases, those courts held that the statement in the medical-marijuana act there in question – that also utilized the "nothing in this act" language found in N.J.S.A. 24:6I-14 – could not create a private cause of action against an employer for wrongful discharge.  Plaintiff here, however, does not allege a newly-created private cause of action for wrongful discharge; he instead argues that his termination violated those rights he possessed under the LAD.  And we note that Connecticut and Arizona expressly prohibit, at least to some degree, employers from discriminating against employees for medical marijuana use, see Noffsinger v. SSC Niantic Op. Co., 273 F. Supp. 3d 326, 334 (D. Conn. 2017) (construing Conn. Gen. Stat. § 21a-408p(b)(3)); Ariz. Rev. Stat. Ann. § 36-2813, but those authorities are also distinguishable because our Compassionate Use Act is simply silent on the subject except to the extent N.J.S.A. 24:6I-14 refutes the notion that any such rights were created by its enactment.

defendants – discriminated against plaintiff, who claims to be a cancer sufferer and, for that reason, a medical-marijuana user. While defendants may argue termination was based on plaintiff's inability to perform the tasks required or because his inability to pass a drug test may jeopardize licensing – all potential responses to a prima facie discrimination claim that would then be subject to allegations of pretextuality – we cannot ignore that this case is only at the pleading stage; our only role is to search with liberality the second amended complaint for a fundament of a cause of action without searching the pleading for proof of the allegations.

To state a prima facie case for disability or perceived disability discrimination under the LAD, a plaintiff must allege: (1) a disability or the employer's perception that the employee was disabled; (2) the employee remains qualified to perform the essential functions of the job and was performing at a level that met the employer's expectations; (3) an adverse employment action because of the disability or perceived disability; and (4) the employer thereafter sought a similarly qualified individual. Grande v. St. Clare's Health Sys., 230 N.J. 1, 17-18 (2017); Victor v. State, 203 N.J. 383, 410-13 (2010).

If a plaintiff establishes this prima facie case, "a presumption arises that the employer unlawfully discriminated against the plaintiff." Grande, 230 N.J.

at 18 (quoting Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 596 (1988)). The analysis then proceeds to the next step, where "the employer's burden varies depending on whether the employer seeks to establish the reasonableness of the otherwise discriminatory act or advances a non-discriminatory reason for the employee's discharge." Id. at 18-19 (quoting Jansen v. Food Circus Supermarkets, Inc., 110 N.J. 363, 382 (1988)). If the employer claims a non-discriminatory reason for the discharge, "the burden of production – not the burden of proof or persuasion – shifts to the employer." Id. at 19 (quoting Jansen, 110 N.J. at 382).

The employee may respond with proof that the employer's proffered reason "was not the true reason for the employment decision but was merely a pretext for discrimination." Ibid. (quoting Jansen, 110 N.J. at 382-83). "To prove pretext, however, a plaintiff must do more than simply show that the employer's reason was false; [the plaintiff] must also demonstrate that the employer was motivated by discriminatory intent." Viscik v. Fowler Equip. Co., 173 N.J. 1, 14 (2002). The burden of proving that the employer intentionally discriminated remains at all time with the employee. Grande, 230 N.J. at 19.

We, of course, are not at the stage where the proofs alleged are to be weighed and analyzed. We need only determine whether plaintiff pleaded the elements of a prima facie case.

In this regard, defendants argue that plaintiff failed to sufficiently allege an LAD claim because he did not allege defendants were aware of his alleged disability nor did he allege that an accommodation was sought. An examination of what's contained in the second amended complaint's four corners reveals defendants are mistaken.

Their mistake – and the judge's mistake in granting the motion – may come from the way in which plaintiff pleaded his claims. The second amended complaint alleged in dozens of enumerated paragraphs the operative facts upon which his separate causes of action are based. We summarized those allegations in Section II(B) above. But the analysis at this stage should not be on the sufficiency of what plaintiff may claim to be able to prove. The only question now is whether plaintiff set forth those allegations necessary to his causes of action. We conclude that he did.

In his broader allegations under each separate count, plaintiff asserted those things that defendants, in their motion to dismiss, contended were lacking.

17

And defendants continue to argue plaintiff did not allege they were aware of his alleged disability.  But plaintiff stated in his second amended complaint:

- "[Carriage] treated [p]laintiff in a discriminatory manner due to [p]laintiff's disability."

- "[Carriage] terminated [p]laintiff due to his disability and off work use of prescribed medical treatment."

- "These illegal actions were committed against [p]laintiff and the conduct complained of would not have occurred but for [p]laintiff's disability."

Were we to stop here, we would conclude that plaintiff alleged enough to require the motion's denial.  Even if it could be said that, in these paragraphs, plaintiff failed to affirmatively state that defendants knew of or perceived a disability, the assertions that plaintiff was terminated "due to his disability" or that Carriage would not have so acted "but for" his disability connotes that Carriage knew of the alleged disability.  How could Carriage have acted because of the alleged disability if it did not perceive or know it?  Moreover, because plaintiff was entitled to the benefit of "every reasonable inference of fact," Printing Mart, 116 N.J. at 746, it was certainly inferable from the allegations quoted above that plaintiff was claiming that defendants knew of or perceived a disability.

But, in searching further, we find the exact allegation defendants claim is missing:

- "Defendants were aware of [p]laintiff's disability, as [d]efendant's upper management communicated with [p]laintiff regarding [p]laintiff's disability and need for continued care and/or treatment."

Defendants' argument that plaintiff failed to allege they were aware of his alleged disability is eviscerated by the second amended complaint's allegation that "[d]efendants were aware of [p]laintiff's disability."

Defendants also contend plaintiff failed to plead that he requested an accommodation because of his disability. Again, the second amended complaint contains numerous allegations that fit that bill, including:

- "Despite knowing of [p]laintiff's disability and need for continued care and/or treatment, [d]efendants failed to engage [p]laintiff in any meaning[ful] process to discuss his disability."

- "It was discussed between [p]laintiff and defendants that due to his disability, he would be required to undergo pain management and needed relief from pain by taking certain drugs prescribed to him [by] his doctor."

These allegations more than adequately rebut the claim that plaintiff failed to allege this necessary aspect of his LAD claims.

We gather that defendants' position, which also informs the judge's decision, is not so much that plaintiff didn't allege those specific pieces of a prima facie LAD claim but that the specific factual recitation contained in the

19

"fact" section of his second amended complaint fails to support the allegations about defendant's awareness of the alleged disability and any request for accommodation. Defendants might also ultimately argue that an LAD action in these circumstances cannot be sustained because the use of medical marijuana may preclude plaintiff from performing the job.[4]  N.J.S.A. 10:5-4.1.[5]  Whether there is any truth to this is beside the point. As we have mentioned, it is enough to survive such a motion that a plaintiff has uttered the allegations required to

---

[4]  The Legislature declared that the Compassionate Use Act should not be construed so as to permit a person to "operate, navigate, or be in the actual physical control of any vehicle . . . while under the influence of marijuana," N.J.S.A. 24:6I-8(a), or permit "smok[ing] marijuana . . . in a private vehicle unless the vehicle is not in operation, . . . or in any place where smoking is prohibited . . .," N.J.S.A. 24:6I-8(b). Since plaintiff did not allege that he sought an accommodation that would have allowed him to "smoke marijuana" while operating a vehicle on the job, we do not presently see how N.J.S.A. 24:6I-8(b) would form a basis for Carriage's refusal to accommodate.  The impact of N.J.S.A. 24:6I-8(a) obviously will require further development and analysis, since it is not limited to "smoking" marijuana but envelopes the use of a vehicle "while under the influence."  At this stage, it is not remotely clear how use of medical marijuana during non-working hours might generate an assertion that plaintiff is unable to perform an aspect of the work – the driving of a hearse or other vehicle – because it is not clear the plaintiff would or could be "under the influence of marijuana" if his use was limited to non-working hours.

[5]  In Vargo v. Nat'l Exch. Carriers Ass'n, Inc., 376 N.J. Super. 364, 383 (App. Div. 2005), we found that an employer did not violate the LAD when it perceived an employee to be a user of illegal drugs based on a failed drug test. That decision has no bearing on the impact of a failed drug test caused by the legal use of medical marijuana.

20

support the causes of action asserted.  Indeed, even when such allegations are not as clearly expressed as here, the applicable standard requires a denial of a motion to dismiss if "a cause of action may be gleaned even from an obscure statement of claim."  Printing Mart, 116 N.J. at 746.  The judge's opinion expressed his belief that more was required of plaintiff than what Printing Mart requires and, for that reason, was erroneous.[6]

We also reject defendants' suggestion that – at least at this stage – the Compassionate Use Act somehow immunizes actions otherwise potentially violative of the LAD because the Compassionate Use Act expressly declares that nothing about it "shall be construed to require . . . an employer to accommodate the medical use of marijuana in any workplace."  N.J.S.A. 24:6I-14.  Plaintiff does not allege the accommodation he sought was the right to use medical marijuana in any workplace.  Instead, while generally alleging his disability "required" that he "undergo pain management and needed relief from pain by taking" prescribed drugs, plaintiff also alleged he discussed with Carriage

---

[6]  For example, in mistakenly concluding that plaintiff failed to allege a requested accommodation, the judge observed that plaintiff "d[id] not identify specific individuals to whom or when the request was made or what was requested."  Even if true and not ascertainable through the benefit of reasonable inferences, it was not necessary that plaintiff provide evidence to support his allegations to defeat this motion.  That burden comes later in the litigation.

A-3072-17T3

representatives that this pain-management treatment would constitute the taking of "prescribed drugs" during "off-work hours" and through "off-site administration." To rephrase what we said earlier, just because the Legislature declared that "[n]othing in [the Compassionate Use Act] shall be construed to require . . . an employer to accommodate the medical use of marijuana in any workplace," N.J.S.A. 24:6I-14, does not mean that the LAD may not impose such an obligation, particularly when the declination of an accommodation to such a user relates only to use "in any workplace." Ibid. Judging this argument solely by reference to the pleadings and the statutes in questions, we repeat that plaintiff did not allege he sought an accommodation for his use of medical marijuana "in [the] workplace"; he alleged only that he sought an accommodation that would allow his continued use of medical marijuana "off-site" or during "off-work hours."

Because we conclude that the Compassionate Use Act does not immunize what the LAD prohibits and because the second amended complaint – whether viewed as written, or when viewed expansively and with liberality, as required

by <u>Printing Mart</u> – contains those allegations required by the LAD, we reverse the order dismissing the LAD claims and remand for further proceedings.[7]

III

We need only briefly discuss the dismissal of plaintiff's defamation and intentional interference claims. As noted, those claims were dismissed "without prejudice" and, when plaintiff inquired whether that designation authorized the filing of a third amended complaint embracing those counts, the judge didn't say and merely entered another order that dismissed those counts "without prejudice."

We have overlooked for present purposes whether that order was a final order for appeal purposes. But, because the "without prejudice" condition bespeaks a right to further pursue those claims, we can only assume that the

---

[7] The judge dismissed the aiding and abetting claims against the individual defendants because, as he said, when a plaintiff "has failed to allege" an LAD violation "there can be no aiding and abetting liability." Because we hold that plaintiff sufficiently asserted an LAD claim against Carriage, the linchpin to the judge's holding on the aiding and abetting claims has been removed. So, we reverse that part of the order under review that dismissed the aiding and abetting claims. And we need not undertake an individual analysis of each separately alleged LAD cause of action pleaded by plaintiff because it is enough that we find a maintainable LAD cause of action. <u>Oasis Therapeutic Life Ctrs.</u>, 457 N.J. Super. at 229 n.6.

A-3072-17T3

judge intended to provide plaintiff with the opportunity to file an amended pleading. Had he not so intended, his dismissal would have been with prejudice.

We urge trial judges to not only express whether a dismissal pursuant to Rule 4:6-2(e) is with or without prejudice but also, when dismissing a claim without prejudice, expressly provide that the pleader may amend.

* * *

For these reasons, we reverse that part of the order under review that dismissed all the LAD claims with prejudice and we remand for further proceedings on those claims. As stated, we view the order that dismissed the defamation and intentional interference claims without prejudice as implicitly permitting plaintiff the right to file an amended pleading, even though the judge did not so state. So viewed, we express no view on that disposition and only remand for an amended order so that a deadline may be fixed for plaintiff's amended pleading on those counts.

Reversed and remanded for proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3072-17T3