**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0302-22

EUGENE SABYAN,

    Plaintiff-Appellant,

v.

ACCOUNTING PRINCIPALS, INC.,
AJILON PROFESSIONAL
STAFFING, LLC, and RICK
FRANKOVITS, individually and in
his supervisory capacity with
ACCOUNTING PRINCIPALS, INC.,

    Defendants-Respondents.

_____

Argued November 8, 2023 - Decided November 22, 2023

Before Judges Whipple, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3335-20.

John Einreinhofer argued the cause for appellant.

Michael J. Westwood-Booth argued the cause for respondents (Ogletree, Deakins, Nash, Smoak & Stewart, PC, attorneys; Thomas J. Rattay and Michael J. Westwood-Booth, on the brief).

PER CURIAM

Plaintiff Eugene Sabyan appeals from a September 23, 2022 order granting summary judgment to defendants Accounting Principals, Inc. (API), Ajilon Professional Staffing, LLC, and Rick Frankovits, and dismissing his complaint with prejudice. We affirm.

We recite the facts from the summary judgment motion record. API employed plaintiff from October 1999 until his termination in October 2019. At the time of his termination, plaintiff was the managing director of API's Paramus location, which had been the company's "flagship" location. In his capacity as a managing director, plaintiff was responsible for the "overall growth, maintenance, development, and profitability" of API's Paramus office.

From January 1, 2018 until his termination, plaintiff reported to Frankovits, who was API's Senior Regional Vice President of Professional Recruitment and Solutions in North America. Before that time, plaintiff reported to Linda Marioni.

During his career with API, plaintiff received praise for his work. From 2015 to 2018, the Paramus office was API's highest grossing branch. In her 2015 evaluation, Marioni opined plaintiff's performance "far exceed[ed] expectations." Additionally, plaintiff was named a company All-Star, invited

2

to a corporate dinner for employees who performed highly, and received performance bonuses for his work.

When Frankovits became the head of API's Paramus office in 2018, Marioni explained she had concerns about the branch's financial health. Net profits for API's Paramus office, which had once been among the highest in the company, declined after 2016. Based on Marioni's concerns, Frankovits, using API's financial records, prepared spreadsheets showing a decline in the overall financial health of the Paramus office. The spreadsheets revealed net profits in API's Paramus office declined about twenty percent in 2016 and thirteen percent in 2017. Additionally, the financial data indicated the branch's revenue, profits, growth, and ability to meet its budget were trending negative from 2017 to 2018.

On April 20, 2018, Frankovits emailed Amy Schneider, who worked in API's human resources department, requesting permission to terminate plaintiff due to the declining performance at API's Paramus office. In this email, Frankovits wrote:

> As follow up to our conversation this morning, I would like to proceed with the termination of [plaintiff's] employment. Below is a recap of several issues that have been recurring concerns in [plaintiff's] ability to perform his job. After numerous discussions

with [plaintiff] there has either been no improvement[]
or improvement that has not met expectations.

Branch revenue year-over-year consistently declining
-Q1 2018 vs Q1 2017 revenue down 11%

Branch [net profits] down year-over-year
-Q1 2018 vs Q1 2017 [net profits] down 15%

Branch budget not being met
-Q1 2018 budget vs actual-branch at 81% of budget
target

FTE growth goals not being met
From Q1 2017 to Q1 2018 FTE declined from 16 to 12

After receiving Frankovits' email, Schneider consulted with API's in-house counsel, Vanessa Hodgerson, regarding plaintiff's termination. Hodgerson recommended against terminating plaintiff at that time due to a pending wrongful termination lawsuit by a former API employee, Renee Metje (Metje litigation).[1]  Hodgerson explained plaintiff, who fired Metje, was a named defendant in the Metje litigation and the company anticipated plaintiff would be API's primary witness in that case.

During the pendency of the Metje litigation, Frankovits worked to improve performance at API's Paramus office.  Frankovits met with plaintiff

---

[1]  Three days prior to Frankovits' email, defendants were served with the complaint in the Metje litigation.

twice in May 2018 to discuss steps to improve plaintiff's personal performance and the performance of API's Paramus office. Frankovits again met with plaintiff on October 3, 2018 to discuss performance at the Paramus office. In an email memorializing the items discussed at this meeting, Frankovits stated plaintiff failed to improve the performance of API's Paramus office. He wrote the "situation in the Paramus branch [was] dire," and "there [were] serious concerns about [plaintiff's] ability to effectively run the branch."

On May 30, 2019, Frankovits emailed Schneider asking about the status of the Metje litigation. In his email, Frankovits wrote he "remain[ed] frustrated with [plaintiff]'s management of the Paramus [office]" and "[t]he [Metje] litigation was putting things on hold." Schneider forwarded the email to API's in-house counsel, who replied she would try to schedule plaintiff's deposition in the Metje litigation immediately. Upon completion of the deposition, Hodgerson advised that API would be able to terminate plaintiff.

On July 2, 2019, plaintiff told Frankovits he may have suffered a small heart attack and required a surgical procedure to clear arterial blockages. Because plaintiff had previously scheduled vacation time for the week after July 2, plaintiff scheduled the procedure during his vacation time. About a

A-0302-22

week after the procedure, on July 15, 2019, plaintiff emailed Frankovits to advise he had returned to work and felt "good."

On July 31, 2019, the Metje litigation settled.[2] On September 6, 2019, Frankovits again met with plaintiff to discuss the performance of API's Paramus office. As a follow-up to the meeting, Frankovits sent a September 11, 2019 email to plaintiff renewing "concerns [about] . . . [plaintiff's] ability to effectively manage the branch," and stating "[w]e have reached a point where there must be immediate and sustained improvement . . . or you will be subject to disciplinary action, up to and including termination."

On September 9, 2019, three days after his meeting with Frankovitz, plaintiff informed defendants he needed a second heart procedure. Plaintiff underwent the procedure four days later. The second surgery did not resolve plaintiff's heart issues and he underwent another procedure on October 22, 2019.

At no time between plaintiff's first heart procedure until his termination did plaintiff request API provide any job-related accommodations. Nor did

---

[2] However, the stipulation reflecting the settlement was not entered until October 8, 2019.

A-0302-22

plaintiff apply for a leave of absence. For each procedure plaintiff received paid time off. He was not required to seek permission for using paid time off.

On September 24, 2019, Frankovits and API's Human Resources Leader, Cheridah Gatti, discussed plaintiff's termination. In an email sent that same day to Schneider, Gatti wrote she "spoke to [Frankovits] th[at] morning" and plaintiff could be terminated "[because] there [was] no concern from a retaliation standpoint." On October 4, 2019, Frankovits terminated plaintiff's employment with API.

After his termination, plaintiff filed a complaint against defendants alleging disability discrimination and retaliation under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50. Plaintiff claimed defendants knew as of June or July 2019 that he had heart issues. Plaintiff further asserted defendants retaliated against him because he took time off from work to address his heart issues. Defendants filed an answer and the parties exchanged discovery.

After the close of discovery, defendants moved for summary judgment and plaintiff filed opposition. Defendants argued they decided to terminate plaintiff fourteen months before plaintiff ever disclosed his heart problem and before plaintiff requested paid time off for his heart procedures.

A-0302-22

The motion judge heard oral argument on September 23, 2022, and placed his decision granting summary judgment to defendants on the record that same day. The judge found "[t]he evidence in this case [was] beyond any serious dispute . . . [that] defendants decided to terminate plaintiff in April of 2018." The judge concluded "[t]he only reason plaintiff was not terminated was that he was a defendant in a discrimination lawsuit filed by another employee and defendants did not want to terminate him while that action was pending." The judge specifically noted "[t]here [were] numerous emails that confirm[ed] that Frankovit[s] intended to and wanted to terminate plaintiff but . . . was prevented from doing so by legal counsel because of the [Metje] lawsuit." Because "[t]here[] [was] absolutely no evidence to support plaintiff's contention that Franko[v]it[s] decided to terminate him because of his medical condition," the judge found plaintiff failed to establish a prima facie case of discrimination.

With respect to the retaliation claim, the judge found plaintiff failed to "offer a shred of evidence to support a retaliation claim." The judge stated his analysis regarding plaintiff's failure to prove a claim for discrimination applied to plaintiff's failure to prove retaliation. In fact, the judge explained "[p]laintiff's retaliation claim . . . actually cuts against [plaintiff's]

discrimination claims." In support of his retaliation claim, plaintiff alleged defendants decided to terminate him after being served with the complaint in the Metje litigation in April 2018. However, in support of his discrimination claim, plaintiff alleged defendants decided to terminate him after learning of plaintiff's heart issues in July 2019. Moreover, aside from this inconsistency in plaintiff's allegations, the judge found plaintiff offered "baseless speculation" that defendants' termination decision was the result of the Metje litigation.

Regarding plaintiff's failure to accommodate claim, the judge found it lacked merit because plaintiff never requested an accommodation. Plaintiff requested paid time off, which the judge determined was not a request for an accommodation. Further, even if paid time off constituted a request for an accommodation, the judge stated plaintiff's requests were routinely granted. Based on these findings, the judge entered a September 23, 2022 order dismissing plaintiff's complaint with prejudice.

On appeal, plaintiff argues the motion judge erred in granting summary judgment. Plaintiff claims he established a prima facie case of employment discrimination based on his disability and presented evidence that defendants' stated reasons for termination were pretextual. He further contends defendants

9

retaliated against him based on his taking paid time off from work to address his heart issues.

"We review a grant of summary judgment de novo, applying the same standard as the trial court." Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 549 (2022) (quoting Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). "[A]n issue of [material fact] is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (quoting R. 4:46-2(c)).

New Jersey courts have adopted the three-part test in McDonnell

A-0302-22

Douglas Corp. v. Green, 411 U.S. 792 (1973), which must be satisfied by a plaintiff alleging a LAD claim. Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005). Under the McDonnell Douglas test:

> (1) the plaintiff must come forward with sufficient evidence to constitute a prima facie case of discrimination; (2) the defendant then must show a legitimate non-discriminatory reason for its decision; and (3) the plaintiff must then be given the opportunity to show that [the] defendant's stated reason was merely a pretext or discriminatory in its application.
>
> [Dixon v Rutgers, The State Univ. of N.J., 110 N.J. 432, 442 (1988).]

Based on the McDonnell Douglas framework, to defeat an employer's summary judgment motion, an employee plaintiff must first establish a prima facie case of discrimination. Zive, 182 N.J. at 447. Once the plaintiff has done so, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for [their] action." Id. at 449.

If the employer can articulate a legitimate, nondiscriminatory reason for termination, the burden shifts back to the plaintiff to prove the stated reason is pretextual. Ibid. The plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious

11

discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 455-56 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

To establish a prima facie case of disability discrimination, a plaintiff must allege:

> (1) a disability or the employer's perception that the employee was disabled; (2) the employee remains qualified to perform the essential functions of the job and was performing at a level that met the employer's expectations; (3) an adverse employment action because of the disability or perceived disability; and (4) the employer thereafter sought a similarly qualified individual.
>
> [Wild v. Carriage Funeral Holdings, Inc., 458 N.J. Super. 416, 429 (App. Div. 2019).]

Having reviewed the record, we are satisfied the motion judge properly granted summary judgment because plaintiff failed to establish a prima facie case of disability discrimination. Based on the uncontroverted evidence, defendants decided to terminate plaintiff in April 2018, fourteen months before plaintiff disclosed his heart condition.

The emails produced in support of summary judgment demonstrated defendants' dissatisfaction with plaintiff's job performance. As early as January 2018, Marioni discussed with Frankovits her concerns about the

financial decline within API's Paramus office. Defendants' emails further evidenced defendants' intent to terminate plaintiff well before the disclosure of plaintiff's heart issues. However, API's in-house counsel advised the company to retain plaintiff because he was a key witness for API in the Metje litigation. Consistent with in-house counsel's advice, two months after a stipulation of settlement was filed in the Metje litigation, defendants terminated plaintiff.

Further, defendants offered ample evidence of API's legitimate, nondiscriminatory reason for terminating plaintiff. Defendants introduced evidence supporting the financial decline of API's Paramus office under plaintiff's guidance starting in 2016 and continuing through 2018. As a result of the declining financial situation at the Paramus office, defendants presented emails addressing their decision to terminate plaintiff more than a year before plaintiff disclosed his heart issues.

None of plaintiff's proffered explanations of why defendants' nondiscriminatory motives were pretextual could support a factfinder disbelieving defendants' reasons for termination or finding a discriminatory motive for the termination. Plaintiff's reliance on his designation as an API All-Star does not support his claim that defendants' termination decision was pretextual. Defendants presented evidence that plaintiff's designation as an

13

All-Star was a formulaic calculation without regard to his personal performance.[3] Here, defendants presented evidence of API's downward yearly corporate trends starting in 2016. Thus, on this record, defendants' decision to terminate plaintiff was not pretextual or motivated by a discriminatory intent.

Nor was plaintiff's invitation to the Champions Club dinner evidence of pretext by defendants. Here, it is undisputed that plaintiff was invited to the dinner because one of his direct reporting employees received an award as a top sales producer. Nothing in the record suggested plaintiff attended the dinner as a result of his own positive work performance at API.

Similarly, plaintiff's positive performance review in 2015 failed to support his claim that defendants' reasons for termination were pretextual. Plaintiff's 2015 performance review was issued three years prior to the decision to terminate him. During the years following the 2015 performance review, defendants documented a steady decline in the financial performance of the Paramus office. Having reviewed the record, nothing about defendants' termination decision supported a discriminatory motive. Defendants

---

[3]  The calculation reflected that the All-Star designation was given to individual employees upon reaching a certain personal billing threshold and managing directors, such as plaintiff, were designated based on branch profitability rather than personal achievement.

A-0302-22

terminated plaintiff as a result of his poor job performance, despite API's efforts to improve plaintiff's personal performance and the performance of the Paramus branch.

We also reject plaintiff's claim the judge erred in finding insufficient evidence to support his retaliation claim. To establish a prima facie case of retaliation under the LAD, the plaintiff must show "(1) plaintiff was in a protected class; (2) plaintiff engaged in protected activity known to the employer; (3) plaintiff was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence." Victor v. State of N.J., 203 N.J. 383, 409 (2010).

Having reviewed the record, we agree plaintiff failed to establish a prima facie case of retaliation. In his complaint, plaintiff alleged defendants retaliated against him for using paid time off. However, plaintiff failed to proffer any evidence establishing a causal connection linking plaintiff's request for time off and defendants' termination decision.

We also reject plaintiff's claim of retaliation based on his involvement in the Metje litigation. This allegation is not set forth in plaintiff's complaint but was first raised in plaintiff's opposition to defendants' summary judgment

15

motion.  We are satisfied the judge properly rejected plaintiff's newly asserted retaliation claim because plaintiff never pleaded that allegation.  Nor did plaintiff pursue that theory of retaliation in responding to defendants' discovery requests.  Moreover, plaintiff failed to produce any evidence causally connecting defendants' termination decision with the Metje litigation other than the fact that defendants' decision occurred around the same time as the filing of the Metje litigation.  Although temporal proximity may suffice to prove causation, it may be discarded when "an objective view of the facts . . . does not" support a cause of action for retaliation.  El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 177 (App. Div. 2005).

Here, defendants presented ample evidence of their decision not to proceed with plaintiff's termination until the Metje litigation resolved.  The decision was based upon advice provided by API's in-house counsel because plaintiff, who was named as a defendant in the Metje litigation, would likely be a witness for API in that case.  On this record, defendants' reasons for terminating plaintiff were tied to the decline in profits at API's Paramus office and plaintiff's failure to improve his personal performance and the performance of the branch.

16

We next consider plaintiff's claim that he requested a reasonable accommodation for his disabling heart issues. He asserts his request for paid time off constituted a request for reasonable accommodation.

Here, plaintiff admitted he did not require any accommodations and never requested any accommodation. Moreover, we are satisfied that a request for paid time off does not equate with an unambiguous request for an accommodation. Additionally, each time plaintiff requested paid time off, his requests were routinely approved by defendants. Thus, even if a claim alleging a failure to accommodate could be gleaned from plaintiff's complaint, such a claim would have failed on this record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0302-22